Barbara R. **TAYLOR**, Plaintiff,

v.

Kenneth S. **APFEL**, Commissioner of Social Security, Defendant.

No. 99–10086.

United States District Court,
E.D. Michigan,
Northern Division.

Nov. 18, 1999.

Lewis M. Seward, Seward, Tally, Bay City, MI, for plaintiff.

Karen M. Gibbs, U.S. Atty's Office, Detroit, MI, for defendant.

*OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE CHARLES E. BINDER*

ROBERTS, District Judge.

**I. Introduction**

Pending before the Court are the Commissioner's Objections to Magistrate Judge Charles E. Binder's September 16, 1999 Report and Recommendation that the Court reverse the Commissioner and remand this action for an award of benefits. The Commissioner agrees that this case should be reversed but argues that it should be remanded for further fact-finding. After a *de novo* review of the record, the Court will adopt Magistrate Judge Binder's Report and Recommendation.

## II. *Background*

Plaintiff alleges that she has a seizure disorder, the severity of which meets the requirements of Listing 11.03. In a November 25, 1997 decision, Administrative Law Judge Robert Stalker concluded that Plaintiff did not meet any listings, although he provided no specific analysis of Listing 11.03. ALJ Stalker went on to conclude that Plaintiff could perform a significant number of sedentary jobs and was, thus, not disabled.

Plaintiff thereafter filed the instant lawsuit. In her Motion for Summary Judgment, she urged the Court to reverse the Commissioner and award benefits to Plaintiff. The Commissioner, on the other hand, filed a Motion to Enter Judgment Reversing the Commissioner's Decision with Remand to the Agency. In that Motion, the Commissioner argued that additional factual development was necessary for a determination of whether Plaintiff is entitled to disability benefits. As a result, there is no dispute that this case should be remanded. Rather, the issue in contention is whether the remand should be for further factual development or for an award of benefits.

## III. *Analysis*

If a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.... A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.

*Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994). In this case, the Court finds that the record is adequate, that the proof of disability is strong and that the evidence to the contrary is lacking.

In particular, the proof is strong that Plaintiff has a seizure disorder the severity of which meets Listing 11.03. That Listing requires:

Epilepsy—Minor motor seizures (petit mal, psychomotor, or focal), documented by EEG and by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.03

In a November 3, 1997 Seizure Questionnaire, one of Plaintiff's treating physicians, David N. Herrman, M.D., opined that Plaintiff had the type and frequency of seizures described in Listing 11.03 and added, "The patient continues to have frequent daily myoclonic jerks as of 11/3/97." (Tr. at 143–144). Further, as required by § 11.00A, Dr. Herrman opined that the frequency of Plaintiff's seizures occurred despite medication. (Tr. at 144).

The Court recognizes that, under § 11.00A, Plaintiff's serum blood levels must be considered for determining whether Plaintiff meets the requirements of § 11.03.[1] Additionally, the Court recognizes that many of the medical records before the Court reflect Plaintiff's serum drug levels as having been either below therapeutic levels or unavailable because Plaintiff had ceased taking her medication. (Tr. at 145–146, 150, 169–170 & 182). However, although § 11.00A requires the Plaintiff's serum drug level be considered, low drug levels do not automatically preclude a claimant from meeting the requirements of Listing 11.03. "When the report-

---

1. In addition to failing to analyze whether Plaintiff met the requirements of § 11.03, ALJ Stalker provided no analysis of Plaintiff's serum drug levels.

ed blood drug levels are low, therefore, the information obtained from the treating source should include the physician's statement as to why the levels are low. . . ."

■ In this case, the record demonstrates that Plaintiff's low drug levels were caused, at least in part, by drug allergies. Plaintiff had allergic reactions to Dilantin, Depakote and Tegretol and she states that that is why she ceased taking those medications. ALJ Stalker asserted that there was little medical verification of these allergies and dismissively concluded that Plaintiff had been noncompliant. (Tr. at 26). However, ALJ Stalker's decision to reject Plaintiff's claim of drug allergies was not supported by substantial evidence. Three of Plaintiff's physicians have noted her allergic reactions to the seizure medications (Tr. at 169, 173 & 182). For example, on December 5, 1996, Karim Fram M.D. stated the following:

> Ms. Taylor was seen on follow-up visit and she reported one seizure early today associated with brief loss of consciousness and jerking of the whole body followed by post ictal forgetfulness for a few minutes. The patient was unable to use Tegretol because of developing rash and swelling of her tongue. She was allergic to Dilantin and Depakote before. She is allergic to Tegretol at this time.

(Tr. at 169).

Significantly, just three days prior to that December 5, 1996 report by Dr. Fram, the level of Tegretol in Plaintiff's blood was within therapeutic range. (Tr. at 171)[2] This evidence supports Plaintiff's claim that she has experienced allergic reactions to her seizure medications when she has attempted to take them as prescribed. On this record, ALJ Stalker was not justified in presuming that Plaintiff has simply been noncompliant.

Moreover, to the extent that Plaintiff has not complied with her treatment, "the Secretary may not deny SSI disability benefits on the basis of noncompliance with treatment unless it is shown that compliance would restore the claimant's ability to work. . . ." *Lucas v. Sullivan,* 918 F.2d 1567, 1572 (11th Cir.1990). Despite ALJ Stalker's finding to the contrary, there is no evidence in the record to refute Dr. Herrman's opinion that Plaintiff's minor seizures continue when she has complied with her treating regimen.

To find that "the claimant's current medications essentially control her seizures," ALJ Stalker mischaracterized the record (Tr. at 28). For example, ALJ Stalker commented that Dr. Fram classified Plaintiff's seizure disorder as being in "full remission" in June 1995. (Tr. at 27). To the contrary, on June 28, 1995, Plaintiff reported to Dr. Fram, " 'I keep having seizures.' " (Tr. at 154). Dr. Fram concluded that Plaintiff had "two types of seizures; one type may represent generalized clonic and possibly tonic seizures and one type represents anxiety spells."[3] (Tr. at 155). It is true that on June 5, 1996, Dr. Fram indicated that Plaintiff's seizure disorder was "in remission," (Tr. at 145), but nowhere did he state that the disorder was ever in "full remission," as ALJ Stalker alleged.

Indeed, the evidence belies any suggestion that Plaintiff's seizure activity has been in "full remission." Dr. Fram's November 21 and December 5, 1996 records document seizure activity. (Tr. at 169–170). Episodes of continuing seizure activity were reported by Dr. Herrman in his February 17, 1997 report and on the November 3, 1997 Seizure Questionnaire. (Tr. at 181 & 143). Additionally, a teacher at Vassar Public School wrote concerning seizures that Plaintiff experienced in Sep-

---

**2.** The lab test shown at transcript page 171 refers to Carbamazepine, which is the chemical name for Tegretol. MOSBY'S DRUG GUIDE, 252 (Mosby Year Book, Inc., 1996).

**3.** This finding of Dr. Fram's is consistent with Dr. Herrman's. Dr. Herrman also found that Plaintiff had two types of seizures: giant myoclonic seizures and daily myoclonic jerks. (Tr. at 144).

tember and October 1997, while Plaintiff was volunteering at the school (Tr. at 180), and Plaintiff's step-mother and husband confirmed Plaintiff's continuing seizure activity. (Tr. at 99–104 & 179).

Further, while noting that Plaintiff's August 10, 1992 CT scan and July 5, 1995 EEG were normal, ALJ Stalker failed to mention or consider Plaintiff's August 5, 1992 abnormal EEG.[4] (Tr. at 24 & 159). Thus, ALJ Stalker was wrong when he claimed, "All diagnostic testing performed on the claimant was essentially normal." (Tr. at 27).

The Court also agrees with Plaintiff that ALJ Stalker mischaracterized the record when stating that Plaintiff's volunteer work at Vassar Public School was essentially full-time. (Tr. at 27–28). Plaintiff's testimony was that she volunteered 4 to 5 hours per week. (Tr. at 48–49). These hours are more properly characterized as part-time.

Thus, for all of these reasons, the Court finds that Plaintiff's proof of disability is strong and that the evidence to the contrary is lacking.

On a final note, the Court condemns ALJ Stalker's reliance on Plaintiff's receipt of ADC and Social Security benefits for one of her children and her poor work record to conclude that Plaintiff is unmotivated to work. (Tr. at 28). Plaintiff has been experiencing seizures since she was 17 years old. (Tr. at 157). Since at least age 21, Plaintiff was cautioned against "driving with a vehicle, engaging in hazardous machinery work, climbing heights, swimming in deep water, etc." (Tr. at 158). She also reported that she had to quit her last job, at the Bavarian Inn in 1990, because of seizure activity. (Tr. at 140 & 162). Relying on Plaintiff's inability to work to conclude that she is ill motivated is hardly justified without substantial evidence that Plaintiff does not really suffer from a disabling seizure disorder. As the Commissioner concedes, such substantial evidence is lacking in this case.

## IV. *Order*

**THE COURT HEREBY ADOPTS** Magistrate Judge Charles E. Binder's Report and Recommendation **[document 18]**, **GRANTS** Plaintiff's Motion for Summary Judgment **[document 12]**, **DENIES** the Commissioner's Motion to Enter Judgment Reversing the Commissioner's Decision with Remand to the Agency **[document 16]**, and **REMANDS** this matter for an award of benefits.

---

4. Moreover, Dr. Herrmann indicated in his February 17, 1997 report that he had scheduled Plaintiff for a repeat EEG. Despite his affirmative obligation to develop a full record, ALJ Stalker failed to ascertain the result of that EEG. Had he done so, he would have learned that the February 1997 EEG was also abnormal, and demonstrated "epileptiform activity of the type typically seen in primary generalized epilepsies." (Tr. at 187).